**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.

**EMH, INC.,**

   **Plaintiff**

vs.

**BEYEL BROTHERS, INC.,**

   **Defendant.**

## PLAINTIFF'S COMPLAINT

Plaintiff, EMH, Inc., brings this action against Defendant, Beyel Brothers, Inc., for damages, injunctive relief, breach of contract, negligence, and for damages and declaratory judgment pursuant to Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA"). In so doing, Plaintiff alleges:

## PARTIES

1. Plaintiff, EMH, Inc. ("EMH"), is a corporation registered in the State of Ohio with its principal place of business in Medina County, Ohio.

2. Defendant, Beyel Brothers, Inc. ("Beyel"), is a corporation registered in the state of Florida with its principal place of business in Brevard County, Florida.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action, pursuant to 28 U.S.C. §1332, since the amount in controversy exceeds $75,000.00 (exclusive of interest and costs) and diversity of citizenship exists between the parties. The Court also has jurisdiction, pursuant to and 28 U.S.C. §2201 (Declaratory Judgment Act).

4. Venue is properly laid in the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Martin County, Florida.

**FACTS**

5. On or about March 25, 2016, EMH and Florida Power and Light Company ("FPL") entered into a contract whereby EMH agreed to construct a gantry crane for FPL for the purposes of facilitating repairs to, and the ongoing maintenance of, FPL's turbines. (See Exhibit 1).

6. After the contract was finalized, EMH contacted Beyel, a subcontractor, to install the gantry crane. Beyel sent EMH an initial written proposal on or about November 3, 2016. Several additional proposals followed until a written contract was ultimately agreed upon on or about April 19, 2017. (See attached Exhibit 2).

7. On February 27, 2017, several of Beyel's employees arrived at the FPL worksite to begin the installation of the gantry crane. They began the process by using a Beyel mobile crane to lift one of the EMH gantry crane's legs ("gantry leg"), which weighed approximately 60,000 pounds.

8. During the process, however, an FPL engineer contacted Beyel's Rigger Foreman and instructed him to halt the process until the engineer could arrive on-site. Beyel's employees complied but failed to take any action to preserve the integrity of the gantry leg. For example, instead of lowering the gantry leg, while awaiting the FPL engineer's arrival, the Beyel employees left it suspended by the mobile crane for several hours.

9. Consequently, the rigging on the mobile crane broke, causing the gantry leg to fall to the platform and onto an FPL building ("incident"). This resulted in significant damage to the both gantry leg and the building.

10. Following this, FPL requested EMH to send employees to the worksite to inspect the damage to the gantry leg. Based on that inspection, however, EMH concluded that the crane could not be installed with the crane leg in its damaged condition. This meant the crane leg would have to be disassembled, transported back to EMH's Ohio facility for repairs, then shipped back for installation. None of these would have been necessary had the incident not occurred.

11. FPL also changed the protocol for the installation. The initial plan involved installing the crane one leg at a time. However, after the incident, FPL demanded that the entire gantry crane be installed in one piece. Naturally, this required the use of a substantially larger mobile cranes.

12. To further complicate matters, FPL had taken one of its turbines off-line for repair (an "outage") on or about the time the gantry crane was to be made operational. Claiming that the need for repairs was pressing, FPL required that a mobile crane be temporarily provided to support the outage until the gantry crane could be installed.

13. To the exclusion of EMH, however, FPL and Beyel determined which contractors, equipment, and personnel would be used for the outage work. Consequently, EMH was not involved in decision-making, given the right to approve expenditures, or recommend potentially less-costly alternatives.

14. EMH incurred an extensive amount of unanticipated additional costs and expenses related to these events which, in turn, were the direct result of the incident. Since the incident was the fault of Beyel and/or FPL, but for their conduct, EMH would not have incurred those costs and expenses.

15. EMH also suffered an extraordinary volume of lost income and profits. For instance, having to divert its resources and employees from other endeavors, such as the

manufacture of products for other customers and projects. These losses, too, were the direct result of the incident, which was caused by Beyel and/or FPL.

16.     However, following the completion of the gantry crane's installation, Beyel sent invoices to EMH seeking payment for all services resulting from the incident, along with the outage work. Those invoices include charges for services and equipment that were never approved by EMH. They also contain charges that are deceptive, excessive, exaggerated, unfair, and improper.

17.     For instance, Beyel is charging approximately 30% more for the same mobile crane to perform outage work than it did to perform the gantry crane installation. Another entry lists a mobilization cost for moving a mobile crane to the worksite. However, that mobile crane was previously used for the installation and had remained at the worksite until its usage again for outage purposes. Therefore, there was no mobilization.

18.     In yet another instance, Beyel charges for a mobile crane that was much larger than necessary to perform the job. Naturally, this resulted in an unnecessary greater cost. Moreover, the mobilization costs associated with a smaller crane are significantly less.

19.     Based on the facts, circumstances, and the conduct of Beyel and FPL, EMH has refused to pay Beyel for the amounts set forth on their invoices.

## COUNT 1
## Breach of Contract

20.     EMH incorporates the preceding paragraphs.

21.     Beyel is charged with the knowledge of its business.

22.     A contract existed between Beyel and EMH as described above.

23.     Beyel breached that contract by failing to adequately, properly and completely

4

fulfill its contractual obligations.  This includes (but is not limited to) its failure to install the gantry leg and gantry crane pursuant to the terms of the contract.

24. As a direct and proximate result of Beyel's breach, EMH has suffered damages in an amount equal to, or exceeding, $800,000.

### COUNT 2
### Negligence

25. EMH incorporates the preceding paragraphs.

26. Beyel owed a duty of care to EMH.

27. Beyel breached that duty.  This includes (but is not limited to) negligently failing to take any action to preserve the integrity of the crane and related conduct.

28. As a direct and proximate result of Beyel's breach, EMH has suffered damages in an amount equal to, or exceeding, $800,000.  These damages include (but are not limited to) EMH's having to compensate FPL for the damage to FPL's property resulting from the gantry leg's fall.

### COUNT 3
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### Damages

29. EMH incorporates the preceding paragraphs.

30. Beyel committed deceptive acts and/or unfair practices in violation the FDUTPA. These include (but are not limited to) the actions and conduct described above.

31. Beyel's deceptive acts and/or unfair practices directly, and proximately, caused EMH to suffer actual damages in an amount equal to, or exceeding, $800,000.

### COUNT 4
### Violation of Florida's Deceptive and Unfair Trade Practices Act

5

**Declaratory Judgment**

32. EMH incorporates the preceding paragraphs.

33. EMH seeks a declaratory for the purpose of determining a question in actual controversy between the parties. Specifically, real, substantial, and justiciable issues with respect to Beyel's deceptive and unfair trade practices.

34. Beyel seeks payment for services which violate the FDUTPA. As a result, EMH has suffered actual damages, and is vulnerable to threatened future injury, if Beyel is awarded payment for those services.

35. A bona-fide, actual, present, and practical need for the declaration of EMH's rights is necessary and appropriate at this time. The damages and threatened injuries are likely to be redressed by a favorable decision.

36. Therefore, EMH requests a declaration from this Court that EMH is not responsible, or liable, to Beyel for any charges or monies that constitute deceptive and unfair trade practices.

**PRAYER FOR RELIEF**

WHEREFORE, EMH prays that this Court will enter judgment in favor of it, and against Beyel, and grant EMH such legal and equitable relief as may be appropriate by:

1. Ordering Beyel to pay EMH actual and/or compensatory damages, in an amount equal to, or exceeding, $800,000;

2. Ordering Beyel to pay EMH pre-judgment and post-judgment interest, as provided by law, in amounts to be proved at trial;

3. Awarding EMH actual damages, plus attorney's fees and court costs, pursuant to the FDUTPA, in an amount equal to, or exceeding, $800,000;

4. Entering a declaratory judgment that EMH is not responsible, or liable, to Beyel for

any charges or monies that constitute deceptive and unfair trade practices;

5. Awarding EMH all such other relief as the Court considers appropriate, fair, and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury.

/s/ *Sheldon P. Starke*
Sheldon P. Starke
Florida Bar No. 0022767


Respectfully submitted,

/s/ *Sheldon P. Starke*
Sheldon P. Starke, Esquire
Florida Bar No. 0022767
Email: starkelaw@aol.com
23250 Chagrin Blvd., Suite 100
Beachwood, Ohio 44122
Telephone: (216) 464-6666

*Attorney for Plaintiff, EMH, Inc.*